**Bracewell LLP**

1251 Avenue of the Americas
New York, NY 10020-1100
Telephone: (212) 508-6100
Facsimile:  (212) 508-6101
Jennifer Feldsher
Mark E. Dendinger

*Attorneys for FTI Consulting Canada Inc.*
*In its Capacity as Monitor and Foreign Representative for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| IMPERIAL TOBACCO CANADA LIMITED, | Case No. 19-10771(___) |
| Debtor in a Foreign Proceeding. | |

**VERIFIED CHAPTER 15 PETITION FOR**
**RECOGNITION OF FOREIGN MAIN PROCEEDING AND RELATED RELIEF**

FTI Consulting Canada Inc. ("FTI," or the "Monitor") is the Court-appointed monitor for

Imperial Tobacco Canada Limited ("ITCAN" or the "Debtor") in a proceeding under Canada's

*Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the

Ontario Superior Court of Justice (Commercial List) at Toronto (the "Canadian Proceeding").  The

Monitor is authorized to serve as the foreign representative of the Debtor as defined by section

101(24) of title 11 of the United States Code (the "Bankruptcy Code").

On March 13, 2019, the Monitor commenced this Chapter 15 case (the "Chapter 15 Case")

by filing, on behalf of the Debtor and pursuant to sections 1504 and 1515 of the Bankruptcy Code,

this Verified Chapter 15 Petition for Recognition of Foreign Main Proceeding and Related Relief

(the "Verified Petition") along with the Official Form 401 (*Chapter 15 Petition for Recognition of*

*a Foreign Proceeding*); the Application for an Order (I) Scheduling Recognition Hearing, (II) Specifying Deadline for Filing Objections and (III) Specifying Form and Manner of Notice (the "Notice Application"); and an Ex Parte Application for Temporary Restraining Order and Relief Pursuant to Sections 1519 and 105(a) of the Bankruptcy Code (the "Application for Provisional Relief" and, collectively with the Verified Petition and Notice Application, the "First Day Motions").

In support of the First Day Motions, the Monitor has also filed a memorandum of law (the "Memorandum of Law") and a Declaration of the Monitor in support of the First Day Motions (the "Bishop Declaration").

## PRELIMINARY STATEMENT

1.      The Monitor has commenced this Chapter 15 case ancillary to the Canadian Proceeding and respectfully files this Verified Petition with the required accompanying documentation pursuant to sections 1504 and 1515 of title 11 of the Bankruptcy Code.  By this Verified Petition, the Monitor seeks (a) recognition of the Monitor as the foreign representative (the "Foreign Representative"), as defined in section 101(24) of the Bankruptcy Code, (b) recognition of the Canadian Proceeding as a foreign main proceeding pursuant to sections 1515, 1517 and 1520 of the Bankruptcy Code and (c) recognition and enforcement of the Initial Order of the Canadian Court dated March 12, 2019 (the "Canadian Order for Relief") in the United States.[1]

2.      The Monitor seeks recognition of the Canadian Proceeding and related relief from this Court to protect the Debtor's assets in the United States and to ensure continuation

---

[1] Alternatively, if the Court does not recognize the Canadian Proceeding as a foreign main proceeding, the Monitor requests that the Court grant the relief available under sections 1507 and 1521 of the Bankruptcy Code as a foreign non-main proceeding.

of the Debtor's supply chain and inventory management and distribution processes while the Debtor pursues a comprehensive restructuring in Canada.  The Verified Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code.  A certified copy of the Canadian Order for Relief is attached hereto as **Exhibit A**, in fulfillment of the requirement of Section 1515(b) of the Bankruptcy Code.  A Statement Identifying Foreign Main Proceedings is attached hereto as part of **Exhibit B**, in fulfillment of the requirement of Section 1515(c) of the Bankruptcy Code.  Pursuant to Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor, and all parties to litigation pending in the United States in which the Debtor is a party at the time of the filing of this Verified Petition, is attached hereto as part of **Exhibit C**, and a corporate ownership statement is attached hereto as **Exhibit D**.

3.     Based on the foregoing and for the reasons described herein, the Monitor submits it has satisfied the requirements for an order granting recognition of the Canadian Proceeding under Chapter 15 of the Bankruptcy Code.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this district pursuant to 28 U.S.C. § 1410(1), as the Debtor maintains its principal place of business in the United States in this district and has a bank account in this district.

5.     The statutory predicates for the relief requested herein are sections 105(a), 1504, 1507, 1515, 1517, 1520, and 1521 of the Bankruptcy Code.

## BACKGROUND

### I.      The Debtor's Business

6.      As more fully described in the Affidavit of Eric Thauvette of the Debtor (the "ITCAN Affidavit"),[2] the Debtor is a privately held corporation incorporated under the Canada Business Corporations Act, R.S.C., 1985, c. C-44 ("CBCA").  The Debtor is 100% owned by British American Tobacco International (Holdings) B.V. which is itself an indirect subsidiary of British American Tobacco, p.l.c. ("BAT").[3]  The Debtor's registered head office is located in Brampton, Ontario.  [ITCAN Aff. ¶ 17]

#### A.      The Debtor's Tobacco Business and U.S. Inventory

7.      The Debtor is primarily a tobacco importer.  It purchases finished tobacco products from its affiliate British American Tobacco Mexico S.A. de C.V. ("BAT MX") and imports them, through the United States, into Canada.[4]  [ITCAN Aff. ¶¶ 4, 19]  The Debtor's tobacco products lead the industry in Canada with roughly 48% market share of all legal Canadian tobacco sales in 2018.  [ITCAN Aff. ¶ 28]

8.      The Debtor's subsidiary, Imperial Tobacco Company Limited ("ITCO"), is the exclusive distributor of the Debtor's tobacco products and PRRPs in Canada.  ITCO buys finished products from the Debtor and sells them to wholesalers and retailers throughout Canada. In all, ITCO sells 15 brands of cigarette products and PRRPs under various trademarks to

---

[2] The ITCAN Affidavit has been filed as Exhibit A to the Bishop Declaration.  Dkt. No. [5].

[3] Copies of the Debtor's Certificate of Amalgamation and Certificate of Amendment are attached to the Bishop Declaration as Exhibit C.

[4] The Debtor also buys a small amount of tobacco finished goods from two BAT affiliated companies and imports tobacco heated products and vaping products (collectively, "PRRPs" or "the potentially reduced-risk products") for sale in Canada, albeit not through the United States.

approximately 26,825 retailers and 184 wholesalers.  [ITCAN Aff. ¶ 4]  ITCO also operates all of ITCAN's distribution centers in Canada.  [ITCAN Aff. ¶ 20]

9.      The Debtor acquires title to the product it purchases from BAT MX once it is loaded onto trucks in Mexico bound for the United States.  The product is brought to the United States and warehoused in the Debtor's two free trade zone distribution centers located in Ohio and Montana and then transported on an "as needed" basis into Canada by ground with Ryder Dedicated (and/or Integrated Logistics, a division of Ryder Truck Rental Canada Ltd. (such Ryder entities, collectively with Ryder subcontractors, "Ryder")) or Baine Johnston Corporation ("BJC").  [ITCAN Aff. ¶¶ 41, 68]  Some product is also transported by UPS.  [ITCAN Aff. ¶ 76]  Based on historical 2018 data, approximately four weeks' worth of finished product inventory is stored in the U.S. distribution centers, one and a half weeks' worth of inventory is in transit and eight to ten days' worth of inventory is in Canada at any given time.  [ITCAN Aff. ¶ 68]

10.      While ITCO is technically in charge of distribution of finished products in the Canadian distribution centers, day-to-day operations and management of ITCAN's distribution centers in both Canada and the United States are performed by either Ryder or BJC.  [ITCAN Aff. ¶ 74]

11.      As of December 31, 2018, the Debtor had total assets of approximately C$5.53 billion and total liabilities of approximately C$1.09 billion. [ITCAN Aff. ¶¶ 117, 123]  As of December 31, 2018, the Debtor and ITCO employed approximately 466 full-time employees and 98 contract employees.  [ITCAN Aff. ¶¶ 45, 46]

B.      **The Debtor's U.S. Operations and Subsidiaries**

12.      The Debtor is the direct or indirect corporate parent of several subsidiaries in the United States.  These include Imasco Holdings Group, Inc. ("Imasco"), Imasco Holdings, Inc., ITL (USA) Limited and Genstar Pacific Corporation (collectively, the "U.S. Subsidiaries").

[ITCAN Aff. ¶ 25]  The U.S. Subsidiaries are dormant but administer various legacy liabilities related to their former business operations, including workman's compensation claims and pension and health plan liabilities.  [ITCAN Aff. ¶ 25]  Over the years, the Debtor has provided funding for the U.S. Subsidiaries on a monthly basis in the form of a capital contribution to Imasco. [ITCAN Aff. ¶ 25]

13.    In 2015, the Debtor moved its principal and only place of business in the United States to New York, New York (the "New York Office"), where it is registered to do business.  The Debtor leases the New York Office for the purpose of administering funding of the U.S. Subsidiaries and otherwise managing its interests in the United States.  The Debtor has a U.S. bank account with Citibank N.A. in New York City, which is primarily used to fund Imasco. [ITCAN Aff. ¶¶ 40, 86]

14.    Pursuant to an agreement dated April 2, 1986, ITCAN guaranteed payment of certain pension and retirement obligations of its U.S. Subsidiaries.  [ITCAN Aff. ¶ 55]  During the pendency of this case, ITCAN intends to continue to fund contributions to Imasco so that its U.S. Subsidiaries can make ordinary course payments in respect of their pension and retirement plan obligations, with the exception of (i) a non-U.S. tax qualified "deferred income plan" for approximately 53 individuals who are either former senior management employees of Genstar or their surviving spouses, (ii) a non-U.S. tax qualified "supplemental executive retirement plan" for approximately 14 individuals who were either former Genstar employees or their surviving spouses, and (iii) a non-U.S. tax qualified "supplementary pension plan" for 3 individuals who were either former Genstar employees or their surviving spouses.  [ITCAN Aff. ¶ 55]

## II.    Events Giving Rise to the Canadian Proceeding

15.    The Debtor and ITCO commenced the Canadian Proceeding as a result of mounting claims and ongoing product liability and consumer litigation across Canada (the

"Tobacco Litigation").  In the aggregate, the plaintiffs in the Tobacco Litigation seek hundreds of

billions of dollars in damages, which exceed the Debtor's total assets by many orders of magnitude.

Recently, the Quebec Court of Appeal substantially upheld a trial judgment in the maximum

amount of approximately C$13.6 billion (the "Damages Award") arising from the May 27, 2015

judgment in the Letourneau and Blais class actions (bearing court file numbers 500-06-00070-983

and 500-06-000076-80).  [ITCAN Aff. ¶¶ 6, 133, 139]  ITCAN's share of the Damages Award

alone is over C$9 billion.  [ITCAN Aff. ¶ 139]

16.    The Quebec class actions are only two of approximately 20 significant

lawsuits currently pending against the Debtor in Canada.[5]  [ITCAN Aff. ¶ 143]  Moreover, the

ongoing proceedings do not represent all of the potential claims brought or that could be brought

under applicable law in relation to the development, manufacturing, production, marketing,

advertising of, representations made in respect of, the purchase, sale, and use of, or exposure to

tobacco products (collectively, with the Tobacco Litigation, the "Tobacco Claims").  Although the

Debtor and ITCO have tried for years to manage the Tobacco Litigation, in light of the magnitude

of the Damages Award, the Debtor and ITCO were forced to initiate the Canadian Proceeding to

obtain, among other things, a stay of proceedings while they develop and institute a fair and

streamlined court-approved process for the quantification and resolution of all Tobacco Claims.

[ITCAN Aff. ¶ 7]

---

[5] A chart detailing the pending lawsuits is attached to the ITCAN Affidavit as Schedule A.

## III.    Commencement of the Canadian Proceeding

17.    On March 12, 2019, the Debtor and ITCO (together, the "CCAA Entities")
filed an application in the Canadian Court for an Initial Order and related relief under the CCAA.
That same day, the Canadian Court issued the Canadian Order for Relief which, among other
things, stays proceedings against the CCAA Entities.  Canadian Order for Relief at ¶¶ 18-21.  In
addition, the Canadian Court expressly authorized the Monitor to seek the relief requested from
this Court in aid of the Canadian Proceeding.  *Id.* at ¶ 62.

18.    As provided in the Bishop Declaration, the Monitor has been advised by
counsel of the definition of a "foreign proceeding" under Bankruptcy Code section 101(23).  As
provided in the Bishop Declaration, to the best of the Monitor's knowledge, the Monitor is not
aware of any other "foreign proceeding" within the meaning of Bankruptcy Code section 101(23)
with respect to the Debtor.

## IV.    Center of Main Interests of the Debtor

19.    The center of main interests, or "COMI," for the Debtor is in Canada.  The
Debtor is organized under Canadian federal law pursuant to the CBCA and has its registered office
in Canada.  [ITCAN Aff. ¶ 17]

20.    Further, the majority of the Debtor's revenue is generated in Canada
through Canadian sales to its subsidiary, ITCO. [ITCAN Aff. ¶ 4]  The Debtor's head office, its
senior management, and virtually all of its employees are in Canada.  [ITCAN Aff. ¶¶ 4, 17, 45]
Also, the Debtor's central decision-making function, both long-range and day-to-day, takes place
in Canada. [ITCAN Aff. ¶ 17]

21.    Accordingly, pursuant to Bankruptcy Code section 1516(c), the Debtor is
entitled to the presumption that its COMI is Canada.

**RELIEF SOUGHT**

22.     By this Verified Petition, the Monitor seeks the following relief:

(a)     recognition pursuant to section 1517 of the Bankruptcy Code of the Canadian Proceeding as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code;

(b)     recognition that the Monitor is the "foreign representative" on a final basis (as defined in section 101(24) of the Bankruptcy Code);

(c)     all relief automatically available pursuant to section 1520 of the Bankruptcy Code, including a stay of execution against the Debtor's assets in the United States and express authorization from the Court for the Debtor to maintain its supply chain, inventory management and distribution processes and otherwise continue its activities in the United States in the ordinary course, and barring, enjoining, and staying, pursuant to section 362 of the Bankruptcy Code, any action to interfere with these assets, business operations or processes;

(d)     the extension of any provisional relief granted under section 1519(a) of the Bankruptcy Code pursuant to section 1521(a)(6); and

(e)     such other and further relief as is appropriate under the circumstances pursuant to sections 105(a) and 1507 of the Bankruptcy Code.[6]

23.     To the extent the relief requested herein exceeds the relief available to the Monitor with respect to the Debtor pursuant to section 1520 of the Bankruptcy Code, the Monitor requests this relief pursuant to sections 1507 and 1521(a)(1) and (2).

24.     In the event the Court were to determine the Canadian Proceeding is not a foreign main proceeding, the Monitor requests that the Court nevertheless grant the relief requested above pursuant to sections 1521 and 1507 of the Bankruptcy Code.

---

[6] The Monitor, on behalf of the Debtor, has filed separately its Application for Provisional Relief and declaration in support of the Application for Provisional Relief, but reserves the right to request provisional relief on an expedited basis in the event any actions are brought against the Debtor during the interim period, or as otherwise necessary.

**BASIS FOR RELIEF**

25.     For the reasons set forth herein and in the Memorandum of Law, the Canadian Proceeding is entitled to recognition under section 1517 of the Bankruptcy Code.  The Canadian Proceeding is (i) a foreign proceeding within the meaning of Bankruptcy Code section 101(23) and (ii) a foreign main proceeding within the meaning of Bankruptcy Code section 1502(4).  As described above, the Debtor's registered office and its principal place of business are located in Canada, which is the Debtor's center of main interests within the meaning of Bankruptcy Code section 1516(c).  The Monitor is a foreign representative within the meaning of Bankruptcy Code section 101(24).  Moreover, the Verified Petition meets the requirements of Bankruptcy Code section 1515.

26.     The requested relief is also consistent with the goals of Chapter 15.  The Monitor is informed and submits that granting the relief sought herein will aid the Canadian Proceeding and will best assure an opportunity for the Debtor to conduct an orderly reorganization of its financial affairs.  Through the Canadian Proceeding, the Debtor is seeking to maximize value for the benefit of its stakeholders and to ensure the just treatment of all holders of claims against and interests in the Debtor.  These goals are aligned with the objectives of Chapter 15.  *See* 11 U.S.C. § 1501(a)(3).

27.     Moreover, granting recognition will promote the U.S. public policy of respecting foreign proceedings as articulated in, inter alia, Bankruptcy Code sections 1501(a) and 1508 and does not violate section 1506.  Thus, the conditions for recognition of the Monitor and the Canadian Proceedings under Bankruptcy Code section 1517 have been satisfied.

28.     Finally, having both substantial assets within the United States and a place of business in the United States, the Debtor qualifies as a "debtor" under section 109(a) of the

Bankruptcy Code.  Accordingly, the Debtor qualifies as a Chapter 15 debtor under applicable Second Circuit authority.

## NOTICE

29.     Notice of this Verified Petition will be provided to all parties listed on Exhibit C to the Notice Application filed contemporaneously herewith.

## NO PRIOR REQUEST

30.     The Monitor has not previously sought the relief requested herein from this or any other court.

## CONCLUSION

WHEREFORE, the Monitor respectfully requests that this Court (a) grant the relief requested in this Verified Petition and enter an order in the form attached hereto as **Exhibit E** and (b) grant such other further relief and additional assistance as this Court may deem just and proper.

Dated: March 13, 2019
    New York, New York

By: /s/  *Jennifer Feldsher*_____
Jennifer Feldsher
Mark E. Dendinger
**BRACEWELL LLP**
1251 Avenue of Americas
New York, New York 10020-1104
Telephone: (212) 508-6100
Facsimile: (212) 938-3837
Jennifer.Feldsher@bracewell.com
Mark.Dendinger@bracewell.com

*Attorneys for FTI Consulting Canada Inc.*
*In its Capacity as Monitor and Foreign*
*Representative for the Debtor*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Date: March 13, 2019
Toronto, Canada

Paul Bishop, LIT
*Senior Managing Director*
FTI Consulting Canada Inc.